CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
MAR 04 2020
JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| VARIETY STORE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:19cv00031 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| MARTINSVILLE PLAZA, LLC, | ) | By: Hon. Jackson L. Kiser |
| | ) | Senior United States District Judge |
| Defendant. | ) | |

This matter is before the court on Defendant Martinsville Plaza, LLC's Motion to Dismiss and Motion for Hearing. The matter was fully briefed by the parties, and I heard oral argument on the motion to dismiss on January 28, 2020. For the reasons stated herein, I will grant the motion to dismiss in part and dismiss Count 1 of Plaintiff Variety Store, Inc.'s Second Amended Complaint.

### I. STATEMENT OF FACTS AND PROCEDURAL BACKGROUND [1]

Plaintiff Variety Stores, Inc. ("Plaintiff") owns and operates a Roses Department Store on property it leases from Defendant Martinsville Plaza, LLC ("Defendant"). The parties originally entered into a lease agreement on August 16, 1984 and have routinely extended the lease several times.

On May 18, 2018, during a heavy rainstorm, a section of roof at the leased premises collapsed, causing damage to Plaintiff's merchandise and fixtures. According to Plaintiff, the roof collapsed "due in at least part to defects in the planning and design of the roof and its

---

[1] The facts are taken from Plaintiff's Second Amended Complaint and, at this stage, are accepted as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

rainwater drainage system . . . ." (Second Am. Compl. ¶ 11 [ECF No. 19].) Plaintiff alleges it has incurred costs related to salvaging merchandise and fixtures as a result of water entering the premises.

Unrelated to the roof collapse, Plaintiff alleges that the HVAC system has stopped working and is beyond repair. Plaintiff replaced the HVAC system and now seeks reimbursement for those costs.

Plaintiff filed suit and has amended its complaint two times. According to the second Amended Complaint, it seeks a declaratory judgment and has also filed suit for breach of contract (arising from both the roof collapse and the unrelated HVAC replacement issue). The lease states, in relevant parts:

> Section 7
> MAINTENANCE BY TENANT: Tenant shall make all necessary non-structural interior repairs, . . . the maintenance of the . . . heating and air conditioning systems and equipment.
> . . .
>
> Section 8
> MAINTENANCE BY LANDLORD 8(a). The Landlord shall . . . also promptly make all repairs or replacements (other than those to be made by Tenant) which may be necessary to maintain the demised premises in a safe, dry and tenantable condition and in good order and repair.
> . . .
>
> Section 18
> INDEMNITY 18(d). The Landlord agrees to indemnify and hold the Tenant harmless from and against all loss, damage or injury to the Tenant's store and to the Tenant's merchandise, fixtures or other property therein, due to or occasioned by any overflow or leakage or defect or exterior walls or the roof . . . .

Plaintiff originally filed its complaint on July 19, 2019 [ECF No. 1] and has since amended its complaint twice. [ECF Nos. 16 & 19.] On September 30, 2019, Defendant

moved to dismiss Plaintiff's Second Amended Complaint [ECF No. 20], and the parties fully briefed the issues raised in Defendant's motion to dismiss. On January 28, 2020, I heard oral arguments on the motion to dismiss. I have reviewed the pleadings, relevant provisions of the lease between the parties, arguments of the parties, and the applicable law. This matter is now ripe for disposition.

## II. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. In determining facial plausibility, the court must accept all factual allegations in the complaint as true. Id. The Complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level . . ." Twombly, 550 U.S. at 555 (internal quotation marks omitted). Therefore, the Complaint must "allege facts sufficient to state all the elements of [the] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003). Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555

## III. DISCUSSION

### a. Count 1: Declaratory Judgment

Under the Declaratory Judgment Act ("DJA"), a district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (2019). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941) (citing Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239–42 (1937)). "[T]he dispute [must] be 'definite and concrete, touching the legal relations of the parties having adverse legal interests.'" Medimmune, Inc. v. Genentech, Inc., 549 U.S. 118, 126 (2007) (quoting Haworth, 300 U.S. at 240–41).

The Supreme Court has "repeatedly characterized the [DJA] as 'an enabling Act, which confers discretion on the courts rather than an absolute right upon the litigant.'" Wilton v. Seven Falls Co., 515 U.S. 277, 276 (1995) (quoting Pub. Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 241 (1952)). "Courts have long interpreted the [DJA's] permissive language 'to provide discretionary authority to district courts to hear declaratory judgment cases.'" Brown-Thomas v. Hynie, 412 F. Supp. 3d 600, 606 (D.S.C. 2019) (quoting United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 493 (4th Cir. 1998)). "[A] declaratory judgment action is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" Centennial Life Ins.

Co. v. Poston, 88 F.3d 255, 256 (4th Cir. 1996) (quoting Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937)).

Defendant argues that I should decline to exercise jurisdiction over Plaintiff's declaratory judgment action. For its declaratory judgment count, Plaintiff seeks a judgment interpreting the Lease and declaring:

> a. Pursuant to the plain and unambiguous language of Section 18(d) of the Lease, Defendant is responsible for all loss, damage, and injury, including reasonable expenses related thereto, due to or occasioned by any overflow or leakage or defect of exterior walls or the roof, and any related collapse at the Leased Premises so long as the leakage, overflow, and collapse are not caused by any defect created by Tenant's neglect;
>
> b. Pursuant to the plain and unambiguous language of Section 18(d) of the Lease, expenses incurred in the salvage of merchandise are "losses" or alternatively are "reasonable expenses" as those terms are used by 18(d) of the Lease, and therefore Defendant must indemnify Variety for such expenses; and
>
> c. Pursuant to the plain and unambiguous language of Sections 7 and 8 of the Lease, and in reading those sections together, replacement and/or resulting cost of replacement of the HVAC system at the leased premises is Defendant's responsibility, and thus Defendant is responsible for all of Variety's loss incurred for the expense of HVAC replacement.
>
> d. Variety may recoup any of these losses by deducting from future rent owed under the Lease.

(Compl. ¶ 39.)

Under relevant Fourth Circuit precedent, a district court may decline to entertain a declaratory judgment claim when it has "good reason" to do so. Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 594 (4th Cir. 2004). Defendant contends that the breach of contract action will resolve all disputes between the parties, and a declaratory judgment action is therefore unnecessary. Accord Torchlight Loan Servs., LLC v. Column Fin. Inc., No. 11 Civ. 7426, 2012 U.S. Dist. LEXIS 105895, at *33 (S.D.N.Y. July 25, 2012) ("[A] declaratory judgment serves no 'useful purpose' when it seeks only to adjudicate an already-existing breach of contract claim.").

Defendant is correct that the declaratory judgment action, as pled, seeks only to resolve issues adequately raised in its breach of contract action. Plaintiff seeks a declaration that: Defendant is responsible for all loss, damage, and injury related to the roof collapse (which the breach of contract action, and any damages awarded, would settle); expenses incurred in the salvage of merchandise are "losses" or "reasonable expenses" under the Lease (which the breach of contract action, and any damages awarded, would settle); and replacement of the HVAC unit is Defendant's responsibility (which the breach of contract action, and any damages awarded, would settle). Nothing in the declaratory judgment action, as pled, raises an issue that is not

squarely before the court in Plaintiff's breach of contract action.[2] Accordingly I decline to exercise jurisdiction under the DJA, and will dismiss Count 1.

### b. Count 2: Breach of Contract

A lease is a contract, and the issue of "whether a contract provision is ambiguous presents and question of law, not of fact." Video Zone, Inc. v. KF & F Properties, L.C., 594 S.E.2d 921, 923 (Va. 2004). "The language of a contract is ambiguous if 'it may be understood in more than one way or when it refers to two or more things at the same time.'" Id. (quoting Eure v. Norfolk Shipbuilding & Drydock Corp., 561 S.E.2d 663, 668 (Va. 2002)). Any ambiguity must appear on the face of the lease. See Salzi v. Va. Farm Bureau Mut. Ins. Co., 463 S.E.2d 450, 452 (Va. 1995). "In determining whether the disputed terms are ambiguous, [the court] consider[s] the words employed in the contract in accordance with their usual, ordinary, and popular meaning." Video Zone, 594 S.E.2d at 924. When a contract is unambiguous in favor of a defendant's position, a court may dismiss a breach of contract claim at the 12(b)(6) stage. See Levinson v. Mass Mut. Life Ins. Co., No. 4:06cv086, 2006 WL 3337419, at *11 (E.D. Va. Nov. 9, 2006) (citing Stewart v. Pension Trust of Bethlehem Steel Corp., 12 F. App'x 174, 176 (4th Cir. 2001)).

---

[2] Insofar as rent abatement is an available remedy, a declaratory judgment action is unnecessary to address the claim. Should Plaintiff prevail in its breach of contract action, the court can craft an appropriate remedy pursuant to the preexisting agreements of the parties, much the same way a court can and often does enforce liquidated damages or specific performance provisions of contracts. Cf. Restatement (Second) of Contracts § 345 cmt. b (1979) ("A court may also enforce a promise by ordering that it be specifically performed or, in the alternative, by enjoining its non-performance.")

Plaintiff has alleged Defendant breached the lease when it failed to replace the HVAC system upon its failure. In seeking dismissal of the breach of contract count, Defendant contends the Lease is unambiguous on the issue of the HVAC replacement costs. It relies on Section 7 and posits that the provision that the Tenant "shall make all necessary non-structural interior repairs, including . . . the maintenance of the electrical, plumbing, heating and air conditioning systems and equipment" is dispositive of Plaintiff's breach of contract claim with regards to the HVAC replacement.

Plaintiff rightly counters[3] that Defendant's argument overlooks Section 8, which requires the *Landlord* to "make all repairs or replacements (other than those to be made by Tenant) which may be necessary to maintain the demised premises in a safe, dry and tenantable condition and in good order and repair." Plaintiff contends that this provision, when read with Section 7, places the onus for *repair* of the HVAC on it, but *replacement* on Defendant. This issue will turn on what constitutes a "dry and tenantable condition." Because the term "tenantable" is open to interpretation and is not otherwise defined in the lease, I find that term to be ambiguous. On its face and as pled, there is at a minimum an ambiguity in the contract which, as a matter of law, cannot be dismissed at this stage.

---

[3] There also appears to be a contention over whether Virginia law applies to the Lease. Regardless of what law applies, the Lease is still ambiguous and Plaintiff's breach of contract claim cannot be dismissed at this stage.

Defendant's final argument is that, to the extent Plaintiff's claims are related to the collapsed roof, Plaintiff's claim for damages must be dismissed. According to Section 18(d) of the Lease, Defendant is only liable for damages caused by an "overflow or leakage or a defect of exterior walls or the roof." Defendant contends the roof collapsed as a result of a natural disaster, not a defect, and thus any resulting damages are not covered by the Lease.

Again, Plaintiff correctly points out that Defendant ignores Plaintiff's allegation that the roof collapsed "due at least in part to defects in the planning and design of the roof and its rainwater drainage system . . . ." (Compl. ¶ 11.) Accepting that allegation as true, which the court is bound to do at this stage, Plaintiff has alleged a "defect" in the "roof," such that its claim for damages is adequately pled. The motion to dismiss on this point will be denied as well.

## IV. **CONCLUSION**

For the foregoing reasons, I will grant the motion to dismiss with regard to Count 1 and deny the motion as to Count 2.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

**ENTERED** this 4th day of March, 2020.

s/Jackson L. Kiser
SENIOR UNITED STATES DISTRICT JUDGE
